Yes, Your Honor. You may proceed. May it please the court. At summary judgment, the district court rejected plaintiff's legal theory. Usually, when that happens, plaintiff loses and the case is over. This case is a cautionary tale of what can happen if instead the district court decides to craft and substitute a brand new legal theory for plaintiffs. And here this led to two fundamental errors. First, the district court misapplied the new legal theory of unilateral contract and then the district court compounded the error by granting summary judgment class-wide, even though the case was never class-certified under the court's new theory. Between 2007 and 2010, Panera told store managers that they might receive a bonus known as a buyout payment. Let me ask you a question. Yes, Your Honor. I don't understand you to be arguing, I guess, that a district court or any other court can't decide a case on the basis of a legal argument that wasn't advanced by either party, are you? I'm not arguing that that itself was error. I'm arguing that the departure from the ordinary procedures has led the district court into error by perhaps not fully understanding the issue. That happens all the time. When I was a district judge, I probably decided cases more often than not on principles. The job is to get the law right, not to decide who's closer. I agree, Your Honor. Unfortunately, in this case, the district court did not get the law right. Okay, well that's a different argument. Of course, and that is my argument, Your Honor. Panera told store managers that they might receive a bonus known as a buyout payment, but only if they worked five years and remained employed on the payout date, both of which Panera had total discretion to prevent, and only if their stores met certain profitability requirements during the fourth and fifth years of work measured against a benchmark that Panera had total discretion to determine. What significance do you think it is that Panera didn't implement this new cap through the store profit hurdle route? I don't think that it's of any significance that they didn't do that here. The point is, for purposes of how the district court analyzed the case, the point is that they had the right to do that. The point is that they couldn't. But they didn't use that? No, they didn't use that. Absolutely not. Is it simply out of the case at this point? I think that the fact that they didn't use it is out of the case. Okay. Yes. In 2011, as the court I'm sure knows before, which was years before most of the managers had worked the crucial fourth and fifth years, and before some had worked two or three years, Panera announced any bonus would be capped at $100,000. The managers received monthly notice of the cap, they were paid under the terms of the capped offer, and nobody objected until years later in 2014. The chief question in this case is whether the managers who eventually completed their fourth and fifth years were performing the original offer or the new capped offer that they were paid for. The district court was correct when it concluded that what plaintiffs should have asserted is that the bonus offer was an offer for a unilateral contract that could be accepted for the performance. Where the district court went wrong was its conclusion that Panera was powerless to change its unilateral offer when it did so. The district court relied on a general legal rule that a unilateral contract is freely revocable only until substantial performance, at which point it becomes irrevocable. Let me ask you a little bit about the Missouri law, if I may, substantial performance. I think that the law with respect to how much performance is necessary before we can say that an offer for unilateral contracts has been accepted, has migrated some over the years. In particular, if you look at the statements of contract, as you know, the Missouri courts frequently rely on restatements for their contract law and other law. You'll see that there's a new phrase that's used, and that is not substantial performance but part performance. I think that this migration represents more than just language. I think maybe the principle has changed in a way that makes it possible for performance on the part of the offeree to be somewhat more truncated than it might be under a substantial performance standard. So what how much is enough? Well, I would say part or substantial. How much is enough? Sure. In this case, your honor, nothing but full performance is enough because of the language of the offer itself. Now, I will address your your question if I might, but I wanted to establish the legal principle first that the district court missed. The district court ignored the exception that applies that when the offer to pay itself makes clear that the obligation to pay can be canceled any time prior to full performance, then we don't look at the substantial performance issue at all, whether it's substantial part or anything else. The exception recognizes that there can be no justifiable reliance on an offer like Sure. It could be canceled any time. It was clear that these employees were not ever going to receive their bonus unless and until they worked the fourth and fifth years, and this is important, they were present on the payout date. That was clear. They weren't going to get anything. Now, under Missouri law, employees at will can't, if they're promised a bonus, they can't, and they're fired before they are able to complete their performance. They might be entitled to a pro rata share of the bonus, but, and this is important, the cases make clear that's not true if they have to be there according to the offer on the payout date, and that's exactly what Panarin's offer said. So these folks had no justifiable reliance to think that part performance or substantial performance or anything other than full performance was going to get them anywhere. That is the rule of law that the district court missed. Our offer was also specifically based on the store profit hurdle, but it specifically said in the offer, hey, we can change that too. Again, no basis to rely that this was going to be on the table when they got to the end. So are you saying the hurdle still is in the case? Well, I'm not saying that. Again, I'm saying that it's only there for the purpose of showing that we had the right to revoke the offer. So you're still relying on the provision as part of your argument. Yes, it goes to the issue of our right to revoke, and therefore, the exception to the restatement rule about substantial performance. But it has to do with the question of how much performance is required. Well... Is that what you're saying? No, I'm saying that, well, yes, in the sense that it shows that there had to be full performance. That's what I'm saying. Yes, in that sense, yes, that it was fully revocable. The district... Counsel, counsel, do you... Yes, Judge. Counsel, how? Do you consider the case of Cook on which the district court relied consistent with the later case of Morrill versus Hallmark Cards? Sure. Well, they're very different in the sense that Cook, which I'm glad you raised that, Judge Loken, the district court asked the parties only after summary judgment had already been briefed to do a supplemental brief about whether this was in fact a unilateral contract or a bilateral contract and pointed to Cook. Now, Cook is a case in which there was full performance before there was an attempted revocation. So to that extent, it certainly shows a certain level of performance that might be expected. Morrill was a different case in that that is a situation in which the employer was not trying to modify a unilateral contract offer that it had reserved the right to modify, but it was trying to impose a new obligation on the plaintiff. It was trying to say, you have to arbitrate, and that was it. Wait, wait, wait. A cap was a new obligation, a new... Was it a term or was it a contract? The cap was essentially a replaced unilateral offer that Panera had the right to replace. We had the full right to revoke and replace the offer, and that's what we did. And by the way, these folks worked for years afterwards without complaining about it, and then they took the money and they kept the money for years afterwards until 2014. So I'm glad you raised the issue of substantial performance. I'm sorry, Judge Loken, I didn't know you weren't finished. Well, you know, I've tried to come in three times. We just, you just keep talking. Was this an employment agreement in the sense of moral statement that you have to have an employment contract to enforce an arbitration clause, or was this a term or a condition of an at-will employment relationship? Well, it was certainly characterized as an employment agreement. It was part and parcel... Yeah, but characterized by whom? That's what it was called. I mean, there was an employment agreement and then there was a bonus agreement and they were tied together. There's no question about it. It's simply not a, it's not a contract because the promises were all illusory by everybody. Panera had the right to get out of it and the plaintiffs had the right, and the managers had the right to quit. So that's why the district court correctly found that it was in fact nothing but an offer for a unilateral contract. I would also say that even if substantial performance was the touchstone... Wait, wait, an offer, if it's an offer for a unilateral contract and an employment at-will relationship, it's a term or condition of employment. The only thing the employer has promised is if you do this, I'll kill you. That's right. All right. Now, but this has, this has additional, I mean, the bonus, the specific futuristic bonus provision makes this a little bit different. I didn't see any discussion by the district court of which this was and why. Uh, there was no further discussion about it. Uh, the district court, the district court simply said, well, it's substantial performance, therefore it was irrevocable, ignored the comment to the restatement and didn't explain why one year of performance was substantial. Now the district court was applying the... You're saying the district court's legal analysis was contrary to the legal analysis and moral. I think that to some extent, yes, although moral wasn't involving an offer of anything. And so it wasn't a unilateral contract. And since it wasn't offering, uh, uh, a bonus, it was just simply trying to enforce as if it was a bilateral contract, an arbitration. Every time an at-will employee is hired, that's an offer. I'm sorry. Every time an at-will employee is hired. Yes. That's an offer of a unilateral contract. I agree as much as much as you work. I'll pay you. I agree. That's correct. I agree with that. I agree with that. And you know, that's not what I'm reading in this case. This case flops all over the at-will doctor. No, I don't, I don't disagree with you at all, Judge Loken. Um, instead of on the substantial performance question, uh, it's clear these folks couldn't get anything unless they worked fourth and fifth years. Uh, the district court, instead of acknowledging the centrality of the fourth and fifth years, insisted that working four or five years was not at all a condition of payout. The court said those are just used to measure the amount of bonus, but if they didn't work the fourth or fifth years, they got nothing. So that sounds like a condition to me. Um, and similar, similarly, the variability as to how long they all worked after getting, uh, uh, the cap. Well, it's a condition of payment. It's not necessarily a condition for the formation of a contract. That's true. It's a different, agree, agree. But again, it goes to the, I don't see how you can, you can say that that's a requirement of something called substantial performance. Well, because under Missouri law, under the catcher side case, under Cook, uh, substantial performance is measured by what's, uh, the, the, the crux of the offer and the performance. They perform, but the issue is, did they perform before the case, the offer was modified. That was what the district court hung its hat on. Okay. Well, I'm repeating myself. That's what the district court hung its hat on that. That was irrevocable. I just have a couple of questions. Um, this, this relationship is documented with an employment and confidentiality agreement. Correct. And then a joint venture general manager compensation plan. Yes. And that, those are the documents we're talking about. Yes, sir. And it's specifically this compensation plan. That's the focus of, uh, what's happened here. That's correct. All right. Now, and these documents are signed by the company and these, these managers. I believe that's correct. And they were in the, in the text, it refers to those agreements. That is correct. And the compensation plan says that, um, this plan is a final and complete exclusive agreement. Um, and then says no modification or waiver shall be valid unless in writing signed by the party against whom the same is sought to be enforced. That is what it says. What's the significance of that requirement for modification to be in writing. The, and then secondly, it isn't, hasn't the company modified this plan? So the significance legally, essentially under Missouri law is not much. Although, uh, the plaintiffs would like to like it to be under Missouri law. That kind of clause is basically void ab initio in the sense that the uh, it says they can't. And by the way, because Panera's new cap to offer was met all the requirements of the unilateral contract offer, the, they did meet the requirements of a new contract that's valid. And I would point the court to Jennings versus SSM, which is where that is exactly what the, the issue was. So the answer to the question is you think that it has no significance? I don't think that it helped plaintiffs at all. That's correct. Uh, I see that my time has expired. I would like to point out of course, that it is also by, by, by granting summary judgment class wide without ever doing a rule 23 class certification analysis, I think that's error right there. And, uh, our briefs make clear that, uh, had they court followed the proper procedure, uh, certification would not have been allowed because there are a lot of individualized issues here, including either we win or the substantial performance is an individualized issue or there's a stopple, uh, all of which. Thank you, Your Honor. Appreciate the time. Okay. Counsel. Good morning, Your Honors. May it, may it please the court. Tim Cofield, I represent the plaintiff class in Appalese. Panera is asking this court to rewrite this contract. Um, we brought a copy of the contract here today. Judge Loken, uh, we're referring to our addendum, which is a copy of the contracted issue here. So it's the first 13 pages of the class member's addendum. Um, on page 12 of the addendum, section five D of the JBGM compensation plan, uh, contains an integration clause. It says, this is the final agreement between the parties with respect to any compensation. It incorporates the employment and confidentiality agreement that has been discussed. And then it says that, uh, no modification or waiver of this signed by the party against whom it's to be enforced. This provision is binding in Missouri to prevent unilateral con unilateral modification by either party. It can only be overridden. It can only be overridden if the parties engage in modification by valid contractual formalities. That was the holding in Jennings that counsel mentioned, uh, where, where the employee had a, had a written employment contract and he and the employer later got together and they entered into an oral severance agreement. Hey, if you work another six months, we'll, we'll pay you severance. And it was fine because there was consideration flowing in both directions. But here we have this agreement and Panera is just trying to- Counsel, that's only true if the compensation plan is not a, it's not a term or condition of an at-will employment contractual relationship. So Judge Logan, if I understand you correctly, you're referring to the, uh, the language in Moro that says an at-will employer is free to, to add additional terms or conditions of employment and the employee can say yes or no, basically, and continue or quit, is that correct? Well, yes, that's good, which is consistent with my longstanding understanding of, of at-will relationships. So what, what Moro held is that an employer cannot gift itself new contractual rights based on the at-will nature of employment. An employer cannot say, hey, uh, if you continue working for me, then you've consented, uh, to be bound by an arbitration agreement. This case is no different from that situation. We have this contract, which was binding, uh, at the time both parties signed it because the class members entered into numerous enforceable promises, and I'll come back to that, Your Honor, but, uh, we had a set of contractual rights in this written document that both parties signed. And one of those contractual rights that the class members had, that Panera had promised them, was if you earn a buyout, it's going to be paid in an amount determined by this very specific formula. That was the status quo here. Moro had nothing like that. Moro, uh, there was no written employment agreement. Uh, the employer just published a policy and said, hey, if you continue working, you can send arbitration. Counsel, get off Moro on the facts. I was talking about its legal analysis. Yes, sir. Cook is close. Cook is closer on the facts in this case, but I'm not, I'm not sure Cook applies to this case. I think, I think Moro's, and that description of the ant-will relationship is accurate. It is accurate if you don't have preexisting contractual rights and obligations. Uh, here we had this contract that the parties entered into where Panera had an obligation to follow the buyout formula. That was the status quo. Counsel, counsel, not, you're now assuming you're failed bilateral contract theory. On the district court's analysis, the original employment agreement and compensation plan were not enforceable bilateral contract. It was an at-will relationship, right? Employment was at will, but the power to end an employment relationship does not in any way mean, uh, imply a power to revoke contractual promises or to amend contractual promises. All right. Where'd you get that? Well, I get it from the language of this agreement. Uh, it's very clear from this agreement. There's no dispute that Panera could have terminated these employees' employment. Yes. Yes. But the, but the compensation plan was explicitly made a part of the at-will employment contract. So therefore it is, uh, you're, I understand if I had, if I had been pursuing the cases originally, I would have done it the way you did, which was to say these two documents together made an enforceable, uh, bilateral relationship, but you lost that. Although you've argued it on appeal and perhaps may be correct, but if it's a relationship from the outset, then it seems to me the district court's analysis breaks down. The district court's analysis was correct under, if you look at it as a unilateral contract or a bilateral contract, your honor, uh, to use your terms, we had an at-will employment relationship here. Okay. And then that means that this written contract, this 12 page document was simply an offer to make a unilateral contract. And the law is very clear on this point. Cook is very clear on this point that an offer can be revoked, uh, at any time prior to acceptance, unless it's supported by consideration. And so then what's consideration? Consideration is a promise to do or to refrain from doing something that's legally binding. And this document that the class members sign is rife with consideration. It is filled with all sorts of goodies that Panera wanted. We've got a contractual agreement to waive the right to a jury trial. Uh, that's enforceable under the Missouri Supreme Court's consistent decision in Milan Realty. We've got, um, provisions limiting damages, uh, limiting, uh, consequential or punitive damages. That's enforceable under the Supreme Court's decision in Purcell Tire. We've got a forum selection clause that required these, these, uh, employees to come to Missouri for any dispute arising out of the employment. That's a huge, a huge promise. It's enforceable under the Missouri Supreme Court's decision in Highline Sales. Um, it's 823 Southwest 2nd 493. It's got a non-disclosure covenant where the, the, these employees promise not to disclose any of the information they gleaned from their time working for Panera. That is a massive promise that is, it's enforceable, um, against them. Uh, as an example, I'll cite this court's decision in Hallmark Cards, uh, versus Murley 703 Federal 3rd 556. That's a 2013 opinion, um, affirming a jury verdict in favor of an employer who sued an employee for violating a non-disclosure agreement, virtually identical to the one contained in this employment and confidentiality agreement and upholding the damages award. Counsel, what's your view of what the Missouri law is with respect to the kind of performance, uh, by the offeree, uh, that, that will, uh, create the contract? Well, assuming that we're dealing with an offer that was not initially supported by consideration. And again, I think there was for those reasons. I'm talking about the district court's theory. Uh, we're talking about the length of performance that's required. I think that Missouri courts follow the first restatement and the second restatement, which is that the beginning of performance or part performance is sufficient consideration to bind, to bind the offeror to his or her offer. Uh, the, the Kaufman decision and the Cook decision, they both cite, uh, the treatise Corbin on contracts that has this language that says, as soon as the offeree renders a substantial part of the requested performance, then the offeror is bound by his promise. So is that a little bit more strenuous than, uh, part performance? Maybe, but if you look at, if you look at the, the actual decisions that Missouri courts have come to in dealing with attempted revocations of unilateral contracts, they just follow the first restatement. Uh, if, as soon as the offeree begins performance in earnest, uh, that binds the, the offeror to this implied subsidiary promise that if you finish your performance, I'm going to pay you what I promised to pay you. If we look at all the cases that I've seen from Missouri rather, court of the courts of appeals, I think, isn't that right? There's not much out of the Supreme court on the question of how much is substantial or how much is part of whatever you want to call it. We have a few court, uh, Missouri courts of appeals opinions. One I'd like to direct the court's attention to is Kaufman. This is, this was the first time. There's nothing out of the Supreme court, right? To my knowledge. No, your honor. Okay. So this is our best evidence of what Missouri law is, but that's, that's all it is, which is a lot. I don't mean there's nothing, but okay. I think Kaufman's a good example. And in that case, the, uh, an insurer offered to pay a claim if a subcontractor would resolve a collateral claim and the court held that, um, by beginning negotiations to resolve that collateral claim and forbearing to sue, uh, the subcontractor, the offeree bound that insurer to that, that settlement offer, uh, they didn't have to complete it, have to actually settle the claim. They just had to begin the negotiations. Uh, that was the request of performance and catch your side versus McLean. And another case that, uh, we, we discussed in our brief, the offer was an oral offer to conduct an auction. And what did the auctioneer do? Well, he inventoried and he marked the items to get them ready for auction, which was, which was significant, but he didn't even begin conducting the auction itself and, uh, and the court held that that was sufficient performance to bind the offeror to the offer. That auctioneer got paid for that auction, even though he didn't even conduct it here, these 67 class members, they all fully performed all five years. They did everything. This contract council, let me, let me come at that a little differently. In 2012, when, uh, an arrow went around, apparently the groups of, of, uh, these general managers, if they'd come into a meeting with 20 general managers and announced, we're not going to cap the bonuses with a hundred thousand dollars. And the manager stood up and said, we don't accept that. It's not fair. And Panera then said, then you're all fired. And you get your contract. I think that would be bad faith. It didn't happen. Um, but no, no, but forget bad faith. If, if you're, if you're right, if your initial bilateral contract theory is correct, that might be a breach of contract. But if it's a unit, if it's, if it's a, if the compensation plan is a term or condition of that will relationship, you, I think you'd have to agree that Panera could have said that. And of course, what then would have happened was bargaining or individual treatment of particular general managers, depending on the regard they were held. Exactly. Your honor. I agree. That's what should have happened is there should have been bargaining here. Uh, this, this name plaintiff wasn't, it wasn't in that kind of a session. So why, why is his under the, under the district court's unilateral contract theory, uh, why is he similar situated? What's, what's the cop? Why is it a commonality on a critical point with the managers who were in those meetings and who did not object? Well, two points, one, all 67 class members, uh, learned about this buyout cap before they were actually capped. Um, some of them, it was because they were given a PowerPoint presentation with respect to the name plaintiffs. Um, they learned about it in different ways, either through emails or because Panera posted a footnote on, on its website or its intranet announcing the cap. They all knew about it. Um, so that's, that's the, that's the crux of Panera's defense. It's always been, you know, we told, we told these people we were going to cap buyouts before we capped the buyouts. And that, you know, that applies equally to everyone, uh, regardless of whether they sat in on a PowerPoint presentation, but more importantly than that, the defense fails as a matter of law because the fact that the fact that Panera announced it was going to impose a buyout cap in and of itself, doesn't have any legal significance. Uh, why not? Because in order to modify this contract, there had to be two things. There had to be additional consideration flowing in both directions and there had to be mutual assent. Now the Missouri court. Now you just went back to the theory you lost. Well, your honor, it's, it's the theory we've always had whenever, whenever the court has asked us about it, I'm not going to shy away from it now. I think the, the court was right under her unilateral contract analysis. I think she was right under her bilateral contract analysis. Um, it does, it doesn't matter because this, as I've explained, the terms of this written document became binding on Panera long before it told people it was going to impose a cap. So you're, uh, under your theory, your bilateral bilateral contract theory, the language you have on the board is really, that's it. That is insignificant with respect to your theory, the requirement for a writing. It's highly significant. What the requirement for writing is not so much significant as it is. Well, that's what I, that's what I thought you just said that there had to be consideration, et cetera. But I haven't heard you reference the requirement for writing. So I've just assumed that under, under your theory, whether there was a requirement for a, a writing in order to modify or no requirement for a writing in order to modify your theory would still, uh, have merit. Is what I'm hearing you say. That's correct. Your honor, the requirement of a writing is not as important here as the prohibition on unilateral modification in Baker, the, the proposed arbitration agreement there had a specific provision that said, Hey, we, the employer, we can unilaterally amend this anytime in the Supreme court said, Hey, that's not a contract because that party can amend its obligations, this provision really isn't in the case because of what this provision has to do with, has to do with his writing. And what you're saying is no, it's just the usual common law of modification that applies has to be some validity to the modification. There can't be a unilateral one, some, some contractual validity. The writing is out of the case, right? I agree that it's, that it's possible to orally amend a contract with this kind of provision in it, even if, even with this kind of provision, if you have consideration flowing in both directions, yes, your honor. I, yeah. Because the theory is that even this provision can be modified through formal contractual negotiations. And therefore the writing thing is simply, the writing requirement simply drops out of the contract. The important part is no unilateral modification. I'm out of time. Your honors. Thank you. We ask that you affirm the district court's judgment. Thank you very much. Does council have any time? I'll give you a minute to wrap up if you'd like. I think that it speaks volumes that council refuses to defend the district court's own judgment in its favor because the district court's judgment was rife with error. I also want to point out that this reference to the, the, the, the lead argument for, for Panera and what I want to leave with is that its initial offer remained fully revocable. Substantial performance or part performance didn't change that because the offer itself allowed it to be fully revocable. Council referred to this notion that, well, it stopped being fully revocable if it was supported by consideration. I, I never really explained what that meant, but I traced that language back to the case of Sokol versus Hill 310 Southwest second 19, but that all that means is that if the offeree pays the offer or to keep the offer open, and then in that sense gives consideration, then it's not freely revocable. But other than that, unilateral offer remains freely revocable. And here it did so because those were the terms of the offer. Thank you. Thank you very much. Thank you, counsel. The case is submitted. Does that complete our calendar for this morning?